IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JULY 1998 SESSION



**FILED**

**May 21, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 03C01-9709-CR-00408 |
| | ) | |
| | ) | Sullivan County |
| | ) | |
| v. | ) | Honorable Edgar P. Calhoun, Judge (at |
| | ) | the suppression hearing) |
| | ) | Honorable Lynn W. Brown, Judge (at trial) |
| | ) | |
| RICHARD M. PARROTT and | ) | (Possession of controlled substances and |
| EDITH L. PARROTT, | ) | possession of controlled substances with |
| | ) | the intent to sell) |
| Appellants. | ) | |

For Appellant Richard Parrott:   For the Appellee:

Charles R. Ray       John Knox Walkup
211 Third Avenue North     Attorney General of Tennessee
Nashville, TN 37219-8288     and
             Janis L. Turner
For Appellant Edith L. Parrott:   Assistant Attorney General of Tennessee
             425 Fifth Avenue North
John E. Herbison       Nashville, TN 37243-0493
2016 Eighth Avenue South
Nashville, TN 37204      H. Greeley Wells, Jr.
             District Attorney General
             P.O. Box 526
             Blountville, TN 37617-0526

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

The defendants, Richard M. and Edith L. Parrott, appeal as of right from their respective drug convictions in a jury trial in the Sullivan County Criminal Court, specifically Mr. Parrott's convictions for possession of a schedule III drug and possession of a schedule IV drug, Class A misdemeanors, and Mrs. Parrott's convictions for possession with intent to sell over one-half gram of a schedule II drug, a Class B felony, and two counts of possession of a schedule III drug, a Class A misdemeanor. Mr. Parrott received an eleven-month, twenty-nine-day concurrent sentence for each conviction with fifty percent to be served in the county jail and the remainder to be served on probation. Mrs. Parrott originally was sentenced as a Range I, standard offender, to serve nine years in the Department of Correction for the felony conviction, and she received two eleven-month, twenty-nine-day sentences for the misdemeanor convictions with fifty percent of each to be served in the county jail. The trial court ordered these three sentences to be served concurrently. The trial court modified Mrs. Parrott's nine-year sentence to have her serve nine months in continuous confinement followed by nine years in a community corrections house arrest program. The defendants present the following issues for our review:

> (1) whether the trial court erred in failing to suppress the fruits of the search because the affidavit supporting the search warrant contained intentionally or recklessly false statements, and

> (2) whether the trial court erred in failing to suppress the fruits of the search pursuant to its inherent power to control procedings at its bar because the assistant district attorney intentionally included false statements in the affidavit supporting the search warrant.

We affirm the trial court's denial of the motion to suppress.

The affidavit in support of the warrant for the search of the defendants' home states in pertinent part:

2

> On Oct. 7, 1992 agents of the 2d Judicial Drug Task Force (DTF) arranged a drug deal in which David Gilley was to deliver Dilaudid, a controlled substance, to an undercover officer posing as a Dilaudid buyer. On Oct. 7, 1992 at about 8:25 p.m., agents of the DTF stopped David Gilley and found in his possession 2 bottles of Dilaudid (100 tablets each) and an unknown amount of Dilaudid powder. David Gilley was supposed to sell 200 Dilaudid tablets to the undercover officer for $4,000.00 (four thousand). Gilley told the officers that he got the Dilaudid from Edith Parrot [sic], and that he was to give $2000.00 of the $4000.00 to Edith Parrot [sic] the night of Oct. 7. Affiant has discovered that Edith Parrot [sic] is employed at Chapman Drugs, a pharmaceutical outlet. Officers gave Gilley $2000.00 in marked DTF money and put a body wire on him, and went with him to the home of Edith Parrot [sic]. Officers listened and observed as David Gilley met with Edith Parrot [sic] and gave her the marked $2000.00. Edith Parrot [sic] accepted the money and quizzed David Gilley about another $1000.00 due on another Dilaudid sale. Parrot [sic] and Gilley also were heard discussing a Valium deal. This conversation was recorded and occurred at approx. 8:56 p.m., Oct. 7, 1992. Gilley was searched by DTF officers before and after the conversation with Parrot [sic]. He had no other such $100 bills on his person at any time, other than the DTF money.

Sullivan County Sheriff's Department Agent Johnny Ray Murray, who was assigned to the Second Judicial Drug Task Force, signed the affidavit.

At the suppression hearing, an assistant district attorney in Sullivan County testified that on October 7, 1992, he assisted the police in preparing a warrant for the search of the defendants' home. He said that he spoke with four officers, Keith Feathers, Johnny Murray, Jerry Robinson, and Steve Terry, and based the information in the supporting affidavit on what they told him. He stated that the detective division of the Bristol Police Department is an open area and that as he talked with the four officers, sometimes several of them would be speaking at once and sometimes he would focus on one individual. He said that initially he thought that one or more of the officers had personally observed the transaction between David Gilley and Mrs. Parrott, but after questioning the officers and before drafting the warrant, he learned that none of the four had directly seen the transaction.

The assistant district attorney testified that the officers told him that they followed David Gilley to the area of the defendants' home. He said that some of the

officers were supposed to remain in their car and listen to the conversation between Gilley and Mrs. Parrott as it was being recorded. He said that other officers were stationed around the defendants' house and that Officer Feathers was responsible for observing the transaction. He said that Officer Feathers reported that he was not able to keep Gilley in sight because Gilley had gone behind the defendants' house or to an adjacent house. He stated that Officer Feathers told him that once he lost sight of Gilley, he did not see him again until minutes later.

The assistant district attorney testified that the part of the affidavit indicating that the officers observed the transaction between Gilley and Mrs. Parrott was misleading, but it was not false. He said that his experience with cases of this type was that one had to move quickly to recover marked money in a search. On cross-examination, he said that he did not write that the officers personally observed Gilley giving the two thousand dollars to Mrs. Parrott, but he acknowledged that to the extent that the affidavit could be read that way, it was misleading. He stated that he was trying to write quickly and efficiently because he wanted the officers to get to the defendants' house immediately because he did not know what would happen to the marked money. He testified that he accompanied Officer Johnny Murray to Judge Klyne Lauderback's house to get the warrant signed.

Officer Keith Feathers testified that he saw the informant, David Gilley, at the location where the officers placed the body wire on him before his meeting with Mrs. Parrott. He said that he then went through the alley between Pennsylvania Avenue and Tennessee Avenue, but he had trouble with some dogs and could not get close enough to see Gilley meet with Mrs. Parrott. He said that he never saw Gilley at or near the defendants' home, and he did not see Mrs. Parrott at all that evening until the officers returned to the defendants' house to execute the warrant. He said he next saw Gilley

4

when the meeting was over and the officers recovered the body wire. He said that this took place away from the defendants' home, but he was not sure of the exact location.

Judge J. Klyne Lauderback testified that he is the General Sessions Court judge in Sullivan County. He said that he held this position on October 7, 1992, but he did not remember signing the search warrant in this particular case. He said that his typical practice is to ask the affiant if he or she has read the search warrant, to have the affiant swear that what he or she is signing is true, to have the affiant sign the warrant in his presence and then to sign the warrant himself.

Agent Johnny Murray testified that he did not see David Gilley approach the defendants' house and that he never saw Gilley meet with Mrs. Parrott. He stated that he, Agent Robinson and Lieutenant Steve Terry parked within a block of the defendants' house and ran the recording device. He stated that ordinarily the officers have to stay within a few hundred yards of the informant to receive the transmission from the wire.

Agent Murray said that he saw Gilley in his car turning on the side street near the defendants' house and traveling in the direction of the defendants' house. He stated that through the recording device, he heard Gilley driving, exiting his car, and talking with a female about drugs he had delivered, money he had been paid, and money that he was giving to the female. He said that he next saw Gilley two or three minutes after the conversation ended. He said that Gilley was driving in the direction of the telephone company parking lot where he and the officers had originally parked before Gilley was to go to the defendants' house.

Agent Murray testified that he did not personally know the identity of the female who spoke with Gilley. He said that before Gilley was wired, Gilley said that he

5

was going to meet Mrs. Parrott. Agent Murray testified that the defendants' house and the house of Gilley's mother-in-law were "located together."

Agent Murray testified that the assistant district attorney drafted the search warrant based on information given to him by Lieutenant Terry, Agent Robinson and himself. He said that the assistant district attorney was told that officers were in the area of the defendants' house monitoring the conversation and that one officer was sent to observe the meeting, but Agent Murray did not know if the assistant district attorney was told that Mrs. Parrott was seen with Gilley. He stated that he went to Judge Lauderback's house with the assistant district attorney, and he swore that the information in the search warrant was true. He said that although he now knows that no one saw the meeting between Gilley and Mrs. Parrott, he had not spoken with the officer in charge of observing the meeting at the time he swore to the search warrant.

The trial court denied the motion to suppress finding that nothing indicated an intent to lie on the part of the assistant district attorney and that probable cause existed even without the officers' observations because the officers overheard Gilley's alleged conversation with Mrs. Parrott. In its Memorandum Opinion, the trial court found:

> The affiant on the search warrant indicated that he did not know [O]fficer Feathers failed to observe the transaction until after the search warrant was issued although the assistant district attorney's testimony appeared to indicate otherwise. Regardless, there is no evidence of willful intent to deceive the magistrate or even of recklessness. The court finds that the "misleading" information is the result of careless composition of conclusory facts.

The trial court found that probable cause was present even without these conclusory facts because of "corroborrative facts including, but not limited to, the radio transmitted conversation with the person alleged to be Edith Parrott and inculpatory statements of Gilley." The trial court found that the informant's reliability was established even in the absence of the conclusory facts.

6

## I. FOURTH AMENDMENT VIOLATION

The defendants contend that the search violated their Fourth Amendment right to be free of unreasonable searches and seizures because the affidavit supporting the search warrant contained intentionally false statements made to deceive the magistrate. The defendants argue that the evidence preponderates against the trial court's factual finding that neither the assistant district attorney nor the affiant acted with a willful intent to deceive or even recklessness. The defendants also contend that the trial court made an incorrect legal conclusion when it determined that the informant's reliability was established by corroborating facts such as the radio transmission.

In Franks v. Delaware, the United States Supreme Court held that the fruits of a search should be excluded when the affidavit in support of the search warrant contains deliberately or recklessly false statements by the affiant, which are material to the establishment of probable cause. 438 U.S. 154, 172-73, 98 S. Ct. 2674, 2684 (1978). The "fraudulent misrepresentation of a material fact will invalidate a search warrant." State v. Little, 560 S.W.2d 403, 406 (Tenn. 1978). Our supreme court has defined two situations in which false information within the supporting affidavit mandates the application of the exclusionary rule despite the affidavit's facial sufficiency:

> (1) a false statement made with intent to deceive the Court, whether material or immaterial to the issue of probable cause, and
>
> (2) a false statement, essential to the establishment of probable cause, recklessly made. Recklessness may be established by showing that a statement was false when made and that affiant did not have reasonable grounds for believing it, at that time.

Id. at 407. Thus, even an immaterial statement in the affidavit will result in exclusion of the evidence if the statement is intentionally false. However, "negligence or innocent

7

mistake [is] insufficient" to support exclusion. <u>Franks</u>, 438 U.S. at 172, 98 S. Ct. at 2684; <u>see</u> <u>Little</u>, 560 S.W.2d at 406-07.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. <u>State v. Odom</u>, 928 S.W.2d 18, 23 (Tenn. 1996); <u>State v. Jones</u>, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). The application of the law to the facts as determined by the trial court is a question of law which is reviewed <u>de novo</u> on appeal. <u>State v. Yeargan</u>, 958 S.W.2d 626, 629 (Tenn. 1997).

### A. FALSE STATEMENT

In the present case, the trial court found that the statements in the affidavit that officers went with David Gilley to the defendants' home and observed Gilley meeting with Mrs. Parrott were neither intentionally nor recklessly false but, instead, resulted from the "careless composition of conclusory facts." Agent Murray, the affiant, testified that at the time he sought to have the warrant signed, he had not spoken with the officer in charge of personally observing the meeting between Gilley and Mrs. Parrott and did not know that the officer had failed to observe the meeting. Agent Murray said that the assistant district attorney had drafted the affidavit after interviewing the various officers involved. The evidence supports the trial court's factual findings.

The defendants focus their concern on the testimony of the assistant district attorney, who admitted that at the time he drafted the affidavit, he knew that the officers had not personally seen Gilley meet with Mrs. Parrott. The assistant district attorney testified that the statements were misleading in the sense that they could be interpreted to indicate personal observation. He explained that he made this error while attempting to write quickly and efficiently in order to get the search warrant and secure

8

the evidence as soon as possible. While this testimony supports the finding that the statements in question were indeed false, it does not go to the intentional or reckless deceit of the affiant, Agent Murray. Both Franks and Little permit the application of the exclusionary rule when the affiant intentionally or recklessly seeks to deceive the magistrate. See Franks, 438 U.S. at 172, 98 S. Ct. 2684 (holding "[t]he deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant"); Little, 560 S.W.2d at 406-07 (noting that to foreclose inquiry into false statements in a supporting affidavit would effectively transfer the discretion which rests with the magistrate to the affiant). When analyzing false statements in a facially valid supporting affidavit, we do not look beyond the conduct of the affiant.

## B. PROBABLE CAUSE

Even if we were to determine that the affiant recklessly made the statements in question, we agree with the trial court's conclusion that probable cause for the search warrant existed even without an officer's personal observation of the transaction. If probable cause is based upon information from an informant rather than the affiant's personal knowledge, we judge the sufficiency of the probable cause by applying the two-pronged test of Aguilar-Spinelli. State v. Jacumin, 778 S.W.2d 430, 432, 436 (Tenn. 1981). This test requires the state to establish a factual basis for the information provided and the veracity of those supplying the information. Id. at 432. The veracity prong may be satisfied by establishing an informant's inherent credibility or by establishing the reliability of the information. Spinelli v. United States, 393 U.S. 410, 415, 89 S. Ct. 584, 588 (1969); Aguilar v. Texas, 378 U.S. 108, 115, 84 S. Ct. 1509, 1514 (1964). However, any deficiency in the informant's information under this two-prong test may be overcome by independent police corroboration. Jacumin, 778 S.W.2d at 436.

The affidavit in the present case states that Gilley said Mrs. Parrott gave him dilaudid and that he was to give two thousand dollars of the proceeds back to her that night. The affidavit reveals that during the recorded conversation, Gilley discussed two other drug deals with Mrs. Parrott. Agent Murray testified that Gilley had told him that he planned to meet with Mrs. Parrott that night. Agent Murray stated that the officers accompanied Gilley to the area of the defendants' house, and they observed Gilley drive away in the direction of the defendants' house. Agent Murray said that the officers heard and recorded Gilley's conversation with a female. The independent police corroboration of Gilley's location along with the recorded conversation make Gilley's identification of Mrs. Parrott reliable and yield sufficient probable cause to support the warrant even in the absence of an officer's personal observation of Mrs. Parrott.

## II. INHERENT POWER

The defendants contend that pursuant to the trial court's inherent power to supervise and control proceedings at its bar, the trial court should have excluded the fruits of the search in order to sanction the assistant district attorney for affirmatively including false statements in the affidavit. The defendants argue that this inherent power includes the authority to sanction attorneys for pursuing matters in bad faith and for acting recklessly. The state maintains that the trial court correctly determined that the statements in the affidavit drafted by the assistant district attorney were not deliberately or recklessly false. While we in no way justify the assistant district attorney's failure to provide the most accurate portrayal of the underlying facts, we hold that the evidence does not preponderate against the trial court's finding that the attorney's use of misleading statements in the affidavit was the result of haste and negligence.

Prosecutors have a duty to submit accurate information to the court. State ex rel. Barnes v. Henderson, 220 Tenn. 719, 727-28, 423 S.W.2d 497, 501 (Tenn. 1968); see State v. Spurlock, 874 S.W.2d 602, 617 (Tenn. Crim. App. 1993) (holding that the district attorney has a duty to correct false testimony). Pursuant to their inherent power to supervise and control their own proceedings, courts may sanction attorneys "but only for pursuing matters in bad faith or conducting themselves in a reckless manner." Andrews v. Bible, 812 S.W.2d 284, 291 (Tenn. 1991) (citations omitted). In the present case, the trial court found that although the disputed statements in the affidavit were "misleading" and "not strictly correct," "there is no evidence of willful intent to deceive the magistrate or even recklessness." Instead, the trial court determined that the misleading statements resulted from carelessness and the use of conclusory facts. The evidence does not preponderate against the trial court's findings.

The defendants contend that courts usually review supporting affidavits with a degree of deference because these affidavits are typically composed hastily by persons in the midst of a criminal investigation who do not have the benefit of a law degree. See United States v. Vantresca, 380 U.S. 102, 108, 85 S. Ct. 741, 746 (1965). The defendants argue that because an attorney drafted this affidavit, the false statements should be held to a more stringent standard of review than the intentional or reckless conduct proscribed in Little. However, we do not believe that the assistant district attorney's careless wording of the affidavit requires the suppression of evidence gathered in a search pursuant to a warrant, even if we could impose such a sanction under our inherent supervisory authority.

In consideration of the foregoing, we affirm the trial court's denial of the motion to suppress.

11

_____
Joseph M. Tipton, Judge

CONCUR:


_____
Gary R. Wade, Presiding Judge


_____
David H. Welles, Judge