# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 17, 2010

## STATE OF TENNESSEE v. LINDSEY RAY BUTLER

### Direct Appeal from the Circuit Court for Maury County
### No. 17524    Stella Hargrove, Judge

### No. M2008-02080-CCA-R3-CD - Filed November 12, 2010

Defendant, Lindsey Ray Butler, was indicted by the Maury County Grand Jury in a one-count indictment for possession of marijuana with intent to sell in violation of Tenn. Code Ann. § 39-17-417(a)(4)(g)(1). Following a jury trial, Defendant was convicted of the lesser included offense of simple possession of marijuana, and the judgment reflects that he was sentenced by the trial court to serve 11 months and 29 days, consecutive to a five-year sentence he is currently serving. In this direct appeal, Defendant challenges the legality of a search of his residence. Finding no error, we affirm the judgment of the trial court.

### Tenn. R. App. P. Appeal as of Right; Judgment of the Circuit Court Affirmed

THOMAS T. WOODALL, delivered the opinion of the Court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, Lindsey Ray Butler.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Michel T. Bottoms, District Attorney General; and Brent Cooper, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

## I. Background

Although the sole issue raised on appeal is the legality of the search of Defendant's residence, we will summarize the facts underlying his conviction.

At trial Deputy Bob Zadan, with the Maury County Sheriff's Department drug unit, testified that he assisted in the execution of a search warrant for 208 Early Road on October

18, 2007. As Deputy Zadan approached the residence, he observed a child with crutches sitting on the front steps. He entered the residence and saw two more occupants inside. They all appeared to be minors, and it was later determined that two of the girls were Defendant's daughters, and the third was a friend of Defendant's daughter. Deputy Zadan brought all three girls into the living room of the residence and advised them of their Miranda rights. There were no adults in the house.

During the search of the residence, officers found two electronic scales, and a sandwich baggie with the corner cut off, which Drug Unit Officer Jeff Wray testified is consistent with items used in the sale of drugs. A bag of marijuana was also found in a plastic bag in a trash can outside of the residence. Officer Brian Cook testified that he located the plastic bag of marijuana in an outside garbage container that appeared to be about one-quarter of the way full. The marijuana was sitting on top of the trash inside the can. TBI Lab tests revealed that the substance contained in the plastic bag was, in fact, marijuana, and the plastic bag was tested for fingerprints, but no identifiable fingerprints were detected. Officers also found a bill addressed to Defendant inside the residence.

Investigator Kenneth Siebolt testified that Defendant arrived at the residence while officers were still searching. Defendant sat beside him at the kitchen table where all of the evidence collected was gathered, and Investigator Siebolt explained Defendant's Miranda rights to him. According to Investigator Siebolt, Defendant indicated he understood his rights, and he maintained a calm demeanor. Defendant then admitted to Investigator Siebolt that the marijuana and paraphernalia were his, explaining that he was unemployed and looking for employment. According to Investigator Siebolt, Defendant stated that selling marijuana helped him pay his bills.

Defendant's fifteen-year-old daughter testified that she lived at the residence with her father and sister. She testified that when she awoke in the morning on the day of the search, her father was not at home. Defendant had spent the previous night in Nashville with a girlfriend. Defendant arrived home sometime that morning and left again that afternoon. Defendant's daughter testified that she took the trash outside to the garbage can sometime after her father left but before police arrived. According to her, the outside garbage can was full, and she did not see a bag of marijuana inside.

Bonnie Horne, Defendant's felony probation officer, testified that Defendant provided her with receipts from a C&E Construction Company as proof of his employment between mid-September and early October in 2007. Mrs. Horne did not contact anyone to verify Defendant's employment. She testified that Defendant was released from jail in July, 2007, and had reported no employment for two months.

Defendant testified that on October 18, 2007, he resided at 208 Early Road. That morning, he arrived home after having spent the night at a friend's house in Nashville. Later that afternoon, he left with a friend named Joanna and returned home later that night. He testified that the reason he came home was because he had called his daughters to check on them and no one answered the phone. As he approached his house, he saw his outside garbage can had been knocked over, so he picked up the trash that had fallen out. His friend Joanna, who had entered the house before him, came to the door and told him that the police were inside. Defendant did not believe that the police were there because he did not see any vehicles around the house. When he walked around to the front of the house, he saw four officers standing on the porch. They asked him if he was Lindsey Butler, and Defendant responded that he was. The officers identified themselves as narcotics agents. Defendant said that he spoke briefly to Investigator Seibolt, but he spoke primarily to Deputy Zadan, with whom he had had previous "run-ins." Defendant testified that he never admitted that the marijuana was his. Defendant admitted that he had been convicted of five prior felonies.

*Motion to Suppress*

Prior to trial, Defendant sought to suppress the evidence obtained from the execution of the search warrant at Defendant's home. At a hearing on August 7, 2008, defense counsel argued that the affidavit did not contain information sufficient to establish probable cause for the search warrant. The State argued that there was independent police corroboration of the information given by the informant by way of an audio monitoring device worn by the informant during the transaction. At the suppression hearing, defense counsel conceded that there was independent police corroboration of the transaction, but argued that the affidavit lacked any information to support the credibility of the informant, pointing to the informant's identification of Defendant and Defendant's residence as the place where the transaction occurred.

The affidavit states:

> "[A]ffiant has within the past 24 hours had a cooperating individual go to the residence at 208 Early Road and purchase a quantity of marijuana from a black male later identified as [Defendant]. The cooperating individual will now be known as C.I. The C.I. was met at a predetermined meeting location whereas the said C.I. and vehicle to be used were searched for illegal narcotics and or monies which none were found. The C.I. was then armed with an audio listening device so that your affiant could hear the drug transaction live as it took place. The C.I. was then given monies by your affiant to make the narcotic purchase. The said C.I. then left the predetermined meeting location and drove straight to 208 Early Road and

did go inside the said residence and was heard talking to a black male who was later identified as [Defendant] by the C.I. there were also other people inside the residence that the C.I. didn't know. The said C.I. did purchase a quantity of marijuana from the male subject and then the said C.I. left the residence and travelled straight back to a predetermined meeting location where as the said C.I. did hand your affiant a quantity of marijuana. The C.I. and vehicle that were used were searched again for illegal narcotics and or monies which none were found. The C.I. was then debriefed and released. The said C.I. drove straight to 208 Early Road and made contact with [Defendant] and then left and drove straight back to a predetermined meeting location without making any other stops except for 208 Early Road and therefore it is your affiant's belief and knowledge that there will be marijuana at the above described residence in the control of [Defendant] and John and or Jane Doe and therefore prays for the issuance of this warrant.

The trial court took the motion to suppress under advisement and later entered an order denying the motion to suppress, finding that the information contained in the affidavit was sufficient to establish probable cause. Specifically, the trial court found that "[t]he information provided in the affidavit is specific and detailed as to the controlled purchase of drugs by the criminal informant. The Court finds that independent police corroboration provided sufficient support to satisfy the criminal informant's credibility and the reliability of his information."

## II. Analysis

On appeal, Defendant challenges only the trial court's denial of the motion to suppress. Defendant asserts that the "affidavit fails to establish the reliability of the criminal informant, or the information provided by the criminal informant." Defendant acknowledges in his brief that the affidavit contains independent police corroboration of a drug transaction, but asserts that the relevant information, that the transaction took place at Defendant's home and with Defendant, is supplied only by the informant and is not independently corroborated.

At the suppression hearing, the State conceded,

The officer does not ever state in plain language, you know, we followed the CI to this location. But it's also noted that this information is based on what the CI told them. The State would submit that if your Honor reads this in common sense manner, plain language, a logical conclusion would be from the reading of the affidavit is that the CI was observed. And the State

would say basically, matter of fact, this is what the CI did; it doesn't say this is what the CI told us he did. And your Honor is allowed to use your common sense and read those affidavits.

There was no testimony or other evidence offered by the State at the suppression hearing.

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). However, this court is not bound by the trial court's conclusions of law. *State v. Simpson*, 968 S.W.2d 776, 779 (Tenn. 1998). The application of the law to the facts found by the trial court are questions of law that this court reviews *de novo*. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. *Braziel v. State*, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

The Fourth Amendment of the United States Constitution guarantees against "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Article I, Section 7 of the Tennessee Constitution provides:

> [t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

Tenn. Const. art. I, § 7.

The purpose and intent of Article I, Section 7 is identical with that of the Fourth Amendment, which is to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." *State v. Simpson*, 968 S.W.2d 776, 779 (Tenn. 1998) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S. Ct. 1727, 1730, 18 L. Ed. 2d 930 (1967)); *State v. Gonzalez*, 52 S.W.3d 90, 95 (Tenn. Crim. App. 2000).

The Fourth Amendment warrant requirement demands that a probable cause determination be made by a neutral and detached magistrate. *State v. Jacumin*, 778 S.W.2d 430, 431 (Tenn. 1989); *State v. Moon*, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). Probable cause has generally been defined as "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." *State v. Johnson*, 854 S.W.2d 897, 899 (Tenn. Crim. App. 1993). If probable cause is absent, the magistrate is not empowered to issue a warrant. When reviewing the issuance of a search warrant, this court must determine whether the magistrate had a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing. The magistrate's judgment is entitled to great deference on appeal. *Jacumin*, 778 S.W.2d at 431-32.

To establish probable cause, an affidavit may rely on hearsay information from a confidential informant if the affidavit also provides facts sufficient to establish reliability. *State v. Henning*, 975 S.W.2d 290, 294 (Tenn. 1998). The affidavit must contain more than merely conclusory allegations. *Moon* 841 S.W.2d at 338. When probable cause is supplied by affidavit to a magistrate where the informant is from the criminal milieu, application of the two-prong *Aguilar-Spinelli* test is required. *State v. Cauley*, 863 S.W.2d 411, 417 (Tenn. 1993). Under the *Aguilar-Spinelli* standard the affidavit must set forth the basis of the informant's knowledge and the veracity of the informant. *State v. Valentine*, 911 S.W.2d 328, 330 (Tenn. 1995); *Cauley*, 863 S.W.2d at 417. According to this two-pronged test, when the affiant relies upon hearsay information from a confidential informant, the magistrate must be convinced that: (1) the informant possesses a "basis of knowledge" concerning the reported events, and (2) that the veracity of the information is not in question. *Jacumin*, 778 S.W.2d at 432; *Moon*, 841 S.W.2d at 338. The basis of knowledge prong requires that the affidavit contain facts from which the magistrate may determine that the informant had a basis for the claim regarding criminal conduct or contraband. *Jacumin*, 778 S.W.2d at 432; *see also Moon*, 841 S.W.2d at 338. The veracity prong requires that the affidavit contain facts from which the magistrate may determine either the inherent credibility of the informant or the reliability of the information provided. *Id*. A deficiency in the above two-prongs of informant's information may be overcome by independent police corroboration. *Jacumin*, 778 S.W.2d at 436.

In the case before us, Defendant challenges the veracity of the information provided by the informant and contained in the affidavit. He contends that the affidavit supporting the search warrant did not contain sufficient information for the magistrate to conclude that the informant was credible or that his information was reliable. While Defendant acknowledges that police electronically monitored the drug transaction described by the informant, he argues in his brief that the affidavit did not state that the police independently corroborated Defendant's identification as the seller or that they followed the confidential informant to the residence at 208 Early Road.

A logical reading of the affidavit underlying the search warrant reveals that the affiant knew from first-hand knowledge that the confidential informant drove straight to and from 208 Early Road, where he purchased marijuana. As to the veracity of the information provided by the informant, we agree with the trial court that the information given by the confidential informant was specific and detailed as to time, place, and identity. Further, by electronically monitoring the drug transaction, the affiant was able to corroborate the information provided by the informant, and independent police corroboration can cure deficiencies in either prong of the analysis. Moreover, "the police need not corroborate every detail of an informant's report to establish sufficient evidence of his veracity." *Moon*, 841 S.W.24 at 341. We conclude that there was sufficient information to provide probable cause for the search warrant.

## CONCLUSION

Based on the foregoing, we affirm the decision of the trial court.

_____
THOMAS T. WOODALL, JUDGE