# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
February 11, 2014 Session

### STATE OF TENNESSEE v. ALAN F. WATSON

### Appeal from the Circuit Court for Houston County
### No. 5018    Larry Wallace, Judge

---

### No. M2013-00462-CCA-R3-CD - Filed May 8, 2014

---

Appellant, Alan F. Watson, was indicted by the Houston County Grand Jury for aggravated robbery. Prior to trial, Appellant sought to suppress the evidence seized after execution of a search warrant at his home. The trial court denied the motion to suppress. At the conclusion of the jury trial, Appellant was found guilty of the aggravated robbery of Crystal's Check Cashing.[1] As a result, he was sentenced to nine years in incarceration as a Range I, standard offender. Appellant appeals, arguing: (1) that the trial court improperly denied the motion to suppress; (2) that he was denied a fair trial when the trial court excluded evidence; and (3) that the evidence is insufficient to support the conviction. After a review of the evidence, we determine that the trial court properly denied the motion to suppress where the affidavit in support of the search warrant established probable cause and did not contain false and misleading information. Additionally, we determine that the trial court did not abuse its discretion in excluding irrelevant evidence and that the evidence is sufficient to support the conviction for aggravated robbery. As a result, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JEFFREY S. BIVINS, JJ., joined.

Jerred A. Creasy, Dickson, Tennessee for the appellant, Alan F. Watson.

---

[1] Throughout the record, the check cashing business is referred to as "Krystle's Check Cashing," "Krystal's Fast Cash, "Krystal's Fashions," and "Crystal's Community and Cash Advance." For consistency, we will refer to the business as Crystal's Check Cashing.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; Dan. M. Alsobrooks, District Attorney General, and Suzanne Lockert-Mash, Assistant District Attorney General, for the appellant, State of Tennessee.

**OPINION**

*Factual Background*

On March 17, 2007, Crystal's Check Cashing in Erin, Tennessee was robbed by a male wearing a blue bandana. Appellant was developed as a suspect in the robbery. On the basis of the information received from the investigation, officers secured a search warrant for Appellant's residence. The Affidavit in Support of Search Warrant stated:

Affiant avers that on March 19, 2007 at approximately 4:15 p.m., the Community Cash Advance in Erin, Tennessee was robbed. Crystal Dew, clerk . . . , told Affiant that a white male wearing a dark ballcap with a blue bandana around his face and wearing a dark plaid shirt came into the store with a small handgun and demanded money. He placed a white plastic grocery bag on the counter for her to put the money in. She put in approximately $1700.00 mostly in bills with some change. After putting the money in the white plastic bag, the man put the clerk in a closet and told her to stay until he was gone. . . .[V]ideo surveillance tape show[ed] an older white dodge pick-up truck parked at the business at the time of the robbery. A witness, George Dew, told Officer Brian Hooper that he saw the vehicle and gave a par[t]ial tag number. Dwayne Dew said he recognized the truck as belonging to Danny Jones. . . . Danny Jones talked to Erin Oficer Brett Parker and said that he had lent it to [Appellant] and that [Appellant] had it at the time of the robbery. . . . [Appellant brought the truck back after the time of the robbery and left it in the yard without telling Jones that he had returned it. HE said this was unusual. . . . [A] Mountain Dew drink [was found] in the truck. . . . [Appellant was observed] purchasing a Mountain Dew Drink at the Sudden Service Market in Erin approximately three hours before the robbery. The drink was placed in a white plastic bag similar to the one used in the robbery. . . . Affiant, along with other law enforcement officers, drove to [Appellant's] address. Before officers could go to the front door, [Appellant] ran out the back door. Affiant observed that [Appellant] is a white male. Officers had to chase [Appellant] and apprehend him. He refused consent to search his residence. Investigator John Etheridge interviewed [Appellant's wife] and she stated that they went to the Sudden Service and bought a Mountain Dew around noon or shortly

-2-

thereafter. She stated that he then dropped her off at work. She confirmed that they were having financial problems and that [Appellant] has a small handgun at the residence. She also stated that he owned several bandanas that are also at the residence. This information was conveyed to the Affiant by John Etheridge.

After the search warrant was executed, Appellant was indicted by the Houston County Grand Jury in May of 2007 for the aggravated robbery. Appellant filed a motion to suppress the evidence obtained during the search. He argued: (1) the search violated his reasonable expectation of privacy; (2) the search was conducted without probable cause because the affidavit contained intentional or reckless misrepresentations and was inadequate; (3) Appellant did not consent to the search; (4) the seized items were not in plain view; (5) Appellant did not receive a receipt for the property taken or a copy of the warrant; and (6) the officer making the return failed to sign the return.

The trial court held a hearing on the motion to suppress. At the hearing, the trial court heard testimony that Danny and Heather Jones were friends of Appellant. On the day of the incident, they lent a truck to Appellant so that he could move furniture and haul trash. Ordinarily, when Appellant borrowed the truck, he would talk to someone at the house when he picked it up and when he returned the keys. On the day of the incident, Appellant picked up the truck around 10:00 a.m. and returned the truck sometime after 3:00 p.m. without talking to Mr. or Mrs. Jones. He left the keys in the truck.

After Appellant left the truck, he called Mr. and Mrs. Jones. During the conversation, he told Mrs. Jones that she should not take the truck into town because there was a robbery at the Western Union, and there were a lot of police in the area.

After authorities talked with the victims, Appellant was developed as a suspect. As a result, several law enforcement personnel placed Appellant's trailer under investigation. Houston County Investigator Thomas Textor was one of those officers. While under surveillance, officers saw Appellant "poke" his head out the back door five or six times. He would "look around and then go back and the door would shut."

Agent Joe Craig of the Tennessee Bureau of Investigation went to Appellant's trailer with several local officers. They arrived in police vehicles but did not activate their blue lights. Houston County Deputy David Conley arrived at Appellant's trailer about fifteen minutes before Agent Craig. Deputy Conley and Investigator Textor recalled some of the vehicles had blue lights activated.

When Agent Craig and other officers exited their vehicles to surround the trailer, Appellant exited the trailer through the back door. Agent Craig was at the front of the trailer at the time. Deputy Conley and Investigator Textor were standing at the back of the house. Deputy Conley heard a "commotion" before the back door to the trailer "flung open fast," and Appellant came out the door "quickly." Investigator Textor agreed that Appellant came out the door "in a hurry" as if he were about to run away but was not running in the literal sense. Investigator Textor did not recall hearing a commotion from inside the trailer before the door but acknowledged that Deputy Conley "hears better" and was closer to the door.

According to Deputy Conley, no one had to chase Appellant. However, Deputy Conley believed that Appellant would have run away if the officers had not been there to stop him. In other words, Appellant "came out in a hurry out the back door" and left with what officers described as the intent to run away. However, when Appellant was ordered to the ground he was compliant.

Appellant denied consent to search his home. At that time, a search warrant was secured. The search was conducted at around 1:30 or 2:00 a.m. the next morning. When the search warrant was returned, Agent Craig initially failed to sign it.

At the conclusion of the hearing on the motion to suppress, the trial court determined that the affidavit was "ample as far as establishing probable cause" and that there was "no intentional or reckless misrepresentations made by the affiant that were central to finding probable cause." The trial court noted that the use of the word "chase" was a "potential" error as far as the placement of the word in the sentence. The trial court stated that the affiant should have said "they apprehended the defendant before they had to chase him" but that the statement was neither intentionally nor recklessly made. From the testimony, the trial court determined that Appellant was "running in an attempt to get away from law enforcement officers who were there," and this supported probable cause. Therefore, the trial court found "no basis for suppressing the evidence."

The case proceeded to trial. At trial, the victim, Crystal Dew, testified that she worked at Crystal's and Community Cash Advance, a business owned by her parents. The business makes payday loans, title loans, cashes checks, and has tanning beds. Ms. Dew stated that the business normally had quite a bit of cash on hand.

On March 17, 2007, at around 4:00 p.m., a white man later identified as Appellant came into the business wearing a "blue [and gray] flannel [plaid] jacket type shirt buttoned completely up." He had a bandana over his face and a baseball cap pulled down low. The man was holding a gun and dropped a white plastic bag onto the counter. The victim was nervous. She immediately realized she was being robbed and tried to put money in the bag.

She started dropping money and actually had to ask Appellant to hold the bag open so that she could get the money inside. The victim placed about $1,700 in the bag before Appellant told her to go into the bathroom and count to ten. He threatened to shoot her if she did not comply. The victim stayed in the bathroom until she heard a truck start outside. At that point, she left the bathroom, pushed the panic button, and waited for the police to arrive. The victim was afraid during the encounter.

At trial, the victim described Appellant's physique as similar to that of the robber. She could not say with 100% certainty that Appellant was the robber but adamantly denied that Danny or Ricky Jones were responsible for the robbery. The victim identified a gun that looked "very similar" to the one used in the robbery. Additionally, she identified a blue bandana and plaid shirt that matched the clothing items worn by Appellant during the robbery.

George Dew, the victim's father-in-law, stopped by the business a few minutes prior to the robbery. While he was there, he noticed a white Dodge truck in the parking lot. He recognized the truck as one that belonged to Danny Jones. Mr. Dew testified that the man inside the truck did not look like Danny Jones and was wearing a "blue checked checkerboard coat" and a blue ball cap. Mr. Dew stated that the license plate started with either a "499" or "477" and ended with "JZV."

Ms. Dew's husband, Dwayne, passed the business several times on the afternoon of the robbery. He saw a white Dodge truck parked outside. It was the truck that belonged to Danny Jones. The man inside the truck was not Danny Jones, but Dwayne Dew was unable to identify the man because he "kept turning away" and was wearing a darker color baseball cap. Dwayne Dew knew that it was not Danny Jones inside the truck because Jones was a larger man.

Joshua Burnaine was across the street at the middle school that afternoon. He saw the white Dodge truck. A man wearing a blue flannel shirt and hat got out of the truck, entered the business. When the man came out of the business, Mr. Burnaine heard coins dropping to the ground as the man got into the truck and drove away.

Gwen Nolen, the proprietor of Gwen's Hair Studio next door to Crystal's, noticed a white truck in the parking lot that day. It was parked "out of place" at a vacant building. Ms. Nolen knew Danny Jones and denied that he was in the truck. The man in the truck was wearing a ball cap and was roughly the same size as Appellant. The truck was gone when she left work at about 4:15 p.m.

Jennifer Jones worked at Sudden Service, a corner market in Erin. Appellant was a regular customer of the store. Appellant came to the store in a small red car at around 1:07 p.m. He bought a Mountain Dew and a two-liter Diet Coke. The surveillance tape from that day was unavailable because the store was "having trouble" with the equipment. Lieutenant Brian Hooper was able to review the surveillance video but was unable to make a copy of the video. Appellant was seen driving up to the store in a red convertible, entering the store with his wife, purchasing drinks, exiting the store, and driving away from the store.

Across the street from the scene of the incident, the middle school video surveillance showed the white truck parked outside at 2:58 p.m. and in the same place at 4:02 p.m. At 4:26 p.m., the tape shows officers arriving on the scene in response to the robbery.

A blue and white flannel shirt or jacket was found "laying just off of the roadway" about four miles away from the incident.

Lieutenant Hooper was at Appellant's home when he was apprehended. Lieutenant Hooper described that Appellant was "attempting to flee the house" and seemed "very nervous." In fact, Appellant appeared to be "very nervous" and was perspiring.

Officer Mark Moore of the Erin Police Department also testified at the trial. He responded to the scene at 4:21 p.m. He received information about the robbery, including the fact that the perpetrator robbed Ms. Dew at gunpoint, took off on Denmark Road in a white Dodge truck with "gray showing on the side of the bed." The license plate of the truck contained a "4" and the letters "JZV."

The truck was located at the home of Danny Jones about 90 minutes after the robbery. The Joneses consented to a search of their residence and truck. Coins and a portion of a one hundred dollar bill were found on the ground outside the truck. Gloves and a Mountain Dew bottle were found inside the truck. There were no usable prints on either the money or the soda.

Appellant's wife, Violet Watson, testified at trial about the money problems that the couple had experienced. Appellant was not working and Mrs. Watson was the sole provider of income for the family. Mrs. Watson admitted that they owned a "small black handgun" and had bandanas. The gun was usually kept on the kitchen table. She recalled stopping at Sudden Service on the day of the incident; she got a Diet Coke and Appellant got a Mountain Dew.

After Appellant's arrest, the officers executed the search warrant. During the search of Appellant's residence, officers located a small black .25 caliber semi-automatic handgun.

The gun was found inside a microwave stand along with white plastic bags. Several bandanas were located in a dresser drawer in Appellant's bedroom. Police located $34.46 on Appellant's person and $1,412.00 in a Jeff Gordon coat in the hallway closet. According to Appellant's wife, there was only $600 in the residence.

At the conclusion of the trial, the jury found Appellant guilty. As a result, he was sentenced to nine years in incarceration as a Range I, standard offender. Appellant appeals.

*Analysis*

First, Appellant insists that the trial court improperly denied the motion to suppress. Specifically, he argues that the search warrant lacked probable cause; was based on information from an unreliable source; and contained false and misleading information. The State, on the other hand, insists that the trial court properly denied the motion to suppress.

"This Court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise." *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)); *see also State v. Moats*, 403 S.W.3d 170, 177 (Tenn. 2013). On appeal, "'[t]he prevailing party in the trial court is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence."'" *Id.* (quoting *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998))). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Our review of a trial court's application of law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001) (citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). When the trial court's findings of fact are based entirely on evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions, and the trial court's findings of fact are subject to de novo review. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000). Further, we note that "in evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

*A. Affidavit*

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures by government agents. *See* U.S. Const. amend. IV; Tenn. Const. art. I, § 7. "These

constitutional provisions are designed to "'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'"" *State v. Moats*, 403 S.W.3d 170, 177 (Tenn. 2013) ((quoting *State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002) (quoting *Camara v. Mun. Ct.*, 387 U.S. 523, 528 (1967))). The Tennessee Supreme Court has noted previously that "[a]rticle I, [section] 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment [of the United States Constitution]," and that federal cases applying the Fourth Amendment should be regarded as "particularly persuasive." *Sneed v. State*, 423 S.W.2d 857, 860 (Tenn. 1968).

In the case herein, there was a search warrant. Of course, an affidavit establishing probable cause is an indispensable prerequisite to the issuance of a search warrant. *See, e.g.*, T.C.A. § 40-6-103; Tenn. R. Crim. P. 41(c); *Henning*, 975 S.W.2d at 294; *State v. Moon*, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). Such probable cause "must appear in the affidavit [itself] and judicial review of the existence of probable cause will not include looking to other evidence provided to or known by the issuing magistrate or possessed by the affiant." *Moon*, 841 S.W.2d at 338; *see also Henning*, 975 S.W.2d at 295. To sufficiently make a showing of probable cause, an affidavit "must set forth facts from which a reasonable conclusion might be drawn that the evidence is in the place to be searched." *State v. Smith*, 868 S.W.2d 561, 572 (Tenn. 1993). However, a decision regarding the existence of probable cause requires that the affidavit contain "more than mere conclusory allegations by the affiant." *State v. Stevens*, 989 S.W.2d 290, 293 (Tenn. 1999); *see also Moon*, 841 S.W.2d at 338. It is true that, "Tennessee law is clear that in determining whether or not probable cause supported issuance of a search warrant only the information contained within the four corners of the affidavit may be considered." *State v. Keith*, 978 S.W.2d 861, 870 (Tenn. 1998) (citing *State v. Jacumin*, 778 S.W.2d 430, 432 (Tenn. 1989)). This language refers to a court's determination whether or not the warrant itself is valid.

A search warrant must be based on probable cause, and "[a] showing of probable cause requires . . . reasonable grounds for suspicion, supported by circumstances indicative of an illegal act." *State v. Stevens*, 989 S.W.2d 290, 293 (Tenn. 1999) (citing *State v. Johnson*, 854 S.W.2d 897, 899 (Tenn. Crim. App. 1993)). Although an affidavit may establish probable cause based on hearsay information from a confidential informant, the information must include more than conclusory allegations. *Id.* When the police use a criminal informant, the two-prong *Aguilar-Spinelli* test applies. *Jacumin*, 778 S.W.2d at 436. The warrant must establish the basis for the informant's knowledge and either a basis for showing the informant's credibility or the reliability of the informant's knowledge. *State v. Cauley*, 863 S.W.2d 411, 417 (Tenn. 1993).

The affidavit must also establish a "nexus among the criminal activity, the place to be searched, and the items to be seized." *State v. Saine*, 297 S.W.3d 199, 206 (Tenn. 2009).

This court considers "'whether the criminal activity under investigation was an isolated event or a protracted pattern of conduct[,] . . . the nature of the property sought, the normal inferences as to where a criminal would hide the evidence, and the perpetrator's opportunity to dispose of incriminating evidence.'" *Id.* (quoting *State v. Reid*, 91 S.W.3d 247, 275 (Tenn. 2002)). This Court "may consider only the affidavit and may not consider any other evidence known by the affiant or provided to or possessed by the issuing magistrate." *State v. Carter*, 160 S.W.3d 526, 533 (Tenn. 2009).

We laid out above, word for word, the facts given by TBI Agent Joe Craig in his Affidavit in Support of Search Warrant, which the State submits provide the probable cause necessary to justify the issuance of the warrant.[2] The affidavit provides a brief description of what the male subject was wearing and recounts information told to the affiant by the victim, a witness, and the owner of the truck that was parked outside the business that was robbed. The affidavit also included information from Danny Jones, the owner of the truck, who loaned the truck to Appellant on the day of the incident. Further, the affidavit recounts information from other officers who observed Appellant in surveillance footage using a plastic bag similar to the one used in the robbery. The affidavit includes the physical address of the residence and details of the events that took place during the robbery, including the amount of money that was stolen. Moreover, the affidavit lists five specific items that are specifically being sought in the search, "cash, gun, plastic bag, clothing, and bandanas." Appellant's first complaint about the warrant is that it was overly broad. We disagree. Agent Craig was charged with establishing probable cause, and the affidavit provided sufficient information from which the magistrate could determine that probable cause existed to grant the search warrant. Appellant is not entitled to relief on this issue.

### B. Unreliable Criminal Informant

Additionally, Appellant argues that the information provided by Danny Jones was unreliable and contained false or misleading information. Appellant complains that nothing in the affidavit supports the credibility of the statements of Danny Jones as informant and seems to suggest that Mr. Jones's prior theft conviction somehow makes him a criminal informant. The State disagrees.

Appellant failed to raise this issue in a motion to suppress or amended motion to suppress. Appellant has waived these issues for failing to raise them in his motion to suppress or present any evidence at the suppression hearing concerning the issues. Tenn. R.

---

[2] The record also contains what appears to be a summary of the affidavit. It is attached to the Affidavit of Complaint and Affidavit in Support of the Search Warrant.

Crim. P. 12(b)(3); Tenn. R. Crim. P. 12(f); and Tenn. R.App. P. 36(a). Appellant is not entitled to relief on this issue.

### C. False and Misleading Information in Affidavit

Lastly, Appellant complains that the information in the affidavit was false and misleading. Specifically, Appellant insists that there were willful misrepresentations by police about whether Appellant attempted to flee and police had to "chase" him to apprehend and arrest him. Additionally, Appellant states that the police fraudulently procured the search warrant on the basis that a Mountain Dew bottle was found in the truck where Appellant purchased a Mountain Dew several hours before the robbery. The State disagrees.

In *State v. Little*, 560 S.W.2d 403, 407 (Tenn. 1978), our supreme court held that "there are two circumstances that authorize the impeachment of an affidavit sufficient on its face, (1) a false statement made with intent to deceive the Court, whether material or immaterial to the issue of probable cause, and (2) a false statement, essential to the establishment of probable cause, recklessly made." *See also State v. Ash*, 729 S.W.2d 275, 278 (Tenn. Crim. App. 1986). Mere negligence is not enough. *United States v. Hole*, 564 F.2d 298 (9th Cir. 1977); *United States v. Collier*, 493 F.2d 327 (6th Cir. 1974); *State v. Leon Hurd*, No. E1999-01341-CCA-R3-CD, 2001 WL 348871, at *6 (Tenn. Crim. App., at Knoxville, Apr. 10, 2001). Recklessness is "established by showing that a statement was false when made and that affiant did not have reasonable grounds for believing it, at that time. *Little*, 560 S.W.2d at 407. Absent a false statement, a defendant is not entitled to delve behind the face of the affidavit. *State v. Houseal*, 667 S.W.2d 108, 109-110 (Tenn. Crim. App. 1983).

It is our conclusion that no false statement was made either intentionally or recklessly herein. Appellant complains that the affidavit states, "[b]efore officers could go to the front door, [Appellant] ran out the back door . . . . Officers had to chase [Appellant] and apprehend him." This language appears in the Affidavit of Search Warrant, not the sworn affidavit of complaint for aggravated robbery. At the hearing on the motion to suppress, officers testified that Appellant flung open the back door and moved quickly across the porch. Officers stated that he was not actually chased, but appeared to be attempting to flee the scene. Appellant's argument that the use of the word "chase" was to mislead or was made recklessly is misplaced. The testimony does not support the conclusion that the statement was false when made by the affiant. Moreover, the inclusion of information about Appellant's Mountain Dew purchase is not a fatal misrepresentation. Officers testified that they personally viewed footage of Appellant purchasing a Mountain Dew at Sudden Service. While he was driving his own car at the time rather than the truck used in the robbery, we see no fatal misrepresentation in the inclusion of this information in the affidavit as a Mountain

Dew bottle was later found in the truck. Appellant is not entitled to relief on this issue.

*Admissibility of Robbery Conviction*

Next, Appellant insists that he was denied a fair trial because he was not allowed to question witnesses related to a prior robbery committed by the brother of Danny Jones and that the police failed to preserve the video of Appellant purchasing drinks at Sudden Service. The State submits that the evidence of the robbery committed by the brother of a State's witness was irrelevant and properly excluded. Further, the State argues that the issue regarding the videotape is waived for failure to present it in a motion for new trial.

Initially, we note that Appellant failed to cite to the relevant portion of the record as required by Tennessee Court of Criminal Appeals Rule 10(b). We choose to address the issue despite the brief's shortcomings. The admissibility of relevant evidence is within the sound discretion of the trial court, and the court's ruling on admissibility will not be disturbed on appeal absent a showing of an abuse of that discretion. *State v. Carruthers*, 35 S.W.3d 516, 576-77 (Tenn. 2000); *State v. Van Tran*, 864 S.W.2d 465, 477 (Tenn. 1993); *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978). As our supreme court stated in *Carruthers*, the modern trend is to vest more discretion in the trial court's rulings on admissibility. *Carruthers*, 35 S.W.3d at 577 (citing *Banks*, 564 S.W.2d at 949).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Tenn. R. Evid. 403. Prejudicial evidence is not excluded as a matter of law. *Carruthers*, 35 S.W.3d at 577. The court must still determine the relevance of the visual evidence and weigh its probative value against any undue prejudice. *Id.* The term "undue prejudice" has been defined "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Banks*, 564 S.W.2d at 950-51 (quoting Fed. R. Evid. 403, Advisory Comm. Notes). We conclude that the introduction about a robbery committed by the brother of a State's witness twelve years prior to the incident at issue is irrelevant. While the information about the robbery was certainly interesting, it did not in any way detract from the large amount of evidence linking Appellant to the crime. There was no other proof pointing to Danny Jones's brother as a suspect. Appellant is not entitled to relief.

As to the surveillance video, we determine Appellant has waived this issue for failure to present in motion for new trial. "[N]o issue presented for review shall be predicated upon

error in the admission of exclusion of evidence . . . unless the same was specifically stated in a motion for new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3. Appellant has waived this issue. Regardless of the waiver, we note that at least one officer viewed the videotape in its entirety and testified that Appellant appeared in the videotape.

*Sufficiency of the Evidence*

Lastly, Appellant challenges the sufficiency of the evidence. He claims that because he was never "identified as the perpetrator" and "no evidence seized from [Appellant] was ever testified to be anything other than similar to that worn by the suspect" there is not proof that he committed the crime. In other words, the evidence to support the conviction was largely circumstantial.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994) (citing *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992)). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). A robbery becomes

aggravated either when the victim is seriously injured or when the defendant "display[s] . . . any article used . . . to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a).

Viewing the evidence in a light most favorable to the State, the proof shows that Appellant borrowed a truck from Danny Jones on the day of the robbery. The truck was seen parked near Crystal's. Several witnesses saw a man in the truck who did not look like Mr. Jones. Around 4:00 p.m., a man dressed in a blue and white flannel jacket with a bandana came into Crystal's. He pulled a gun on Ms. Dew, dropped a white plastic bag on the counter, and stole $1,700. As he was leaving the store and getting into the white truck, a witness saw him drop coins onto the ground.

The truck was returned to Mr. Jones at some point that afternoon. Appellant called Mr. Jones and told him not to go to town because of a robbery. When police searched the truck, they found a Mountain Dew inside and some coins on the floorboard. After a search warrant was executed at Appellant's home, officers found a handgun, white plastic bags like the one used in the robbery, several bandanas, and more than $1,400. The evidence was sufficient to support Appellant's conviction for aggravated robbery. Appellant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

-13-