IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 10, 2015 Session

**STATE OF TENNESSEE v. ASHLEY ALTMAN**

**Appeal from the Circuit Court for Giles County**
**No. 16005     Robert L. Holloway, Jr., Judge**

**No. M2014-00086-CCA-R3-CD – Filed July 13, 2015**

The defendant, Ashley Altman, appeals her Giles County Circuit Court jury convictions of manufacturing marijuana, possession of a firearm during the commission of a dangerous felony, and possession of drug paraphernalia, claiming that the trial court erred by refusing to suppress evidence obtained during a search of her residence and that the evidence was insufficient to support her conviction of possession of a firearm during the commission of a dangerous felony. We affirm the convictions and sentences but remand for correction of clerical errors in one of the judgments.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

Patrick McNally and James O. Martin, III (on appeal), Nashville, Tennessee, and Randal L. Sands (at trial), Pulaski, Tennessee, for the appellant, Ashley Altman.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General (Senior Counsel); T. Michel Bottoms, District Attorney General; and Beverly White, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In October 2012, the Giles County Circuit Court grand jury charged the defendant with one count each of manufacturing marijuana, possession of a firearm during the commission of a dangerous felony, and possession of drug paraphernalia. The trial court conducted a jury trial in August 2013.

The State's proof at trial showed that Pulaski Police Department ("PPD") Investigator Kenneth Bass received information that marijuana was being grown at 417

Morningside Drive. On May 2, 2012, Investigator Bass and Investigator Joey Turner went to the Morningside Drive residence and conducted a "trash pull" whereby the officers retrieved the garbage that had been set outside the residence for pick up by the local sanitation agency. In that trash pull, Investigator Bass found an electric bill and a box of "Miracle Gro" and learned that the house was occupied by the defendant and Nicole Velez. On June 6, the two investigators returned for a second trash pull, in which they found another electric bill in the defendant's name and receipts from Home Depot and a gardening shop. The receipts listed items such as "buckets, bloom booster, fans, plastic bags, flex-duct, screw hooks, and chains," as well as 400-watt and 600-watt light bulbs. The officers also discovered "leaves and stems" that, when subjected to a field test, tested positive for marijuana base.

Investigator Bass then obtained a search warrant for the defendant's residence and executed that search warrant on June 7. During the search, officers discovered an obscured trapdoor in the floor of the utility room, which led to the basement of the residence. In the basement, officers discovered 71 marijuana plants growing in "kidney swimming pools" and plastic buckets. Timers controlled lights for the plants, and exhaust fans had been installed to force air from the basement outside the house. On the main floor of the house, officers found "a bucket with marijuana stems in it, a pair of garden gloves, four pairs of trimming scissors, a dehydrator, and a magazine [with] different kinds of styles of marijuana." In one of the bedrooms, officers located a marijuana grinder, some loose marijuana, and a "glass pipe used for smoking marijuana." In or on the bedroom nightstand, PPD Investigator Gerrod Shirey discovered a Glock pistol, and, according to Investigator Bass, the handgun had "ammunition in one magazine." Photographs of the marijuana plants and other evidence collected from the scene were admitted into evidence. Investigator Turner described the defendant's basement as "one of the most elaborate grows that" he had ever encountered.

After the defendant was arrested, she executed a rights waiver and told investigators that Ms. Velez was a former roommate who had moved out of the residence because she did not approve of the defendant's marijuana use. The defendant explained that the marijuana plants did not belong to her and that she was merely "growing them in her basement for somebody else" so that she could earn extra money. The defendant admitted that she cared for the plants and that she was expecting to receive a portion of the marijuana sales once the plants were harvested.

Special Agent and forensic scientist Kassandra Franklin-Beavers with the Tennessee Bureau of Investigation ("TBI") testified that she received samples of the plants seized from the defendant's residence. Agent Franklin-Beavers analyzed one sample and determined that the 5.13 grams tested positive for marijuana.

With this evidence, the State rested. Following the trial court's denial of the defendant's motion for judgments of acquittal and a *Momon* colloquy, the defendant elected to testify.

The defendant testified that she had financial problems following the death of her father and that an acquaintance from whom she had previously obtained marijuana, Harold Rosenbaum, told her she could make between $10,000 and $20,000 per month by allowing him to set up a marijuana growing operation in her basement. The defendant admitted that the pistol found in her bedroom nightstand belonged to her. She explained that she had purchased the handgun in 2009 as a requirement for her former employment as an armed guard. The defendant testified that she kept the pistol for "protection, in case of a burglary or . . . somebody coming in my home with an intent to harm me."

Based on this evidence, the jury convicted the defendant as charged of manufacturing marijuana, possession of a firearm during the commission of a dangerous felony, and possession of drug paraphernalia. Following a sentencing hearing, the trial court sentenced the defendant as a standard offender to consecutive three-year sentences on both the conviction of manufacturing marijuana and the conviction of possession of a firearm during the commission of a dangerous felony. In addition, the trial court imposed a sentence of 11 months and 29 days for the conviction of possession of drug paraphernalia. Following the mandatory service of three years' incarceration for the possession of a firearm charge, the balance of the defendant's sentence was to be served on supervised probation, for a total effective sentence of six years, 11 months, and 29 days.

Following the denial of her timely motion for new trial, the defendant filed a timely notice of appeal. In this appeal, the defendant contends that the trial court erred by denying her motion to suppress and that the evidence was insufficient to support her conviction of possessing a firearm during the commission of a dangerous felony. We will address both issues in turn.

*I. Motion to Suppress*

The defendant first contends that the trial court erred by refusing to suppress evidence obtained during a search of her residence. Specifically, the defendant claims that the search warrant was invalid because the affidavit in support of the warrant failed to provide sufficient information on the "reliable source" and because the receipts found in the trash pull failed to reflect a date and therefore were "too stale to establish probable cause."

At the suppression hearing, Investigator Bass testified about the circumstances that led him to seek a search warrant for the defendant's premises. The affidavit in support of the warrant, sworn to and subscribed by Investigator Bass, stated that the defendant and a third party were in possession of "Marijuana, Marijuana Plants, and paraphernalia associated with the use, packaging, and manufacturing [of] marijuana" at 417 Morningside Drive. The affidavit continued as follows:

> The affiant's reason for such belief is that in April of 2012 the Affiant received information from a reliable source that marijuana was growing inside the residence. The Affiant began an investigation and conducted surveillance of the residence. The Affiant established [the defendant] . . . resided at the residence.
>
> On May 2, 2012 the Affiant and Inv. Joey Turner conducted a trash pull at 417 Morningside Drive. The designated time for the City of Pulaski to pick up trash is each Wednesday for this street. The trash was found to have been located in a poly cart at the edge of Morningside Drive to be picked up by the Wednesday trash pick up. The trash was taken to the Pulaski Police Department. There were approximately 2 individual bags of trash. The Affiant and Inv. Turner went through each bag. An Electric Bill was found in the name of Ashley Altman in the trash. The address was listed as Ashley Altman, 417 Morningside Drive, Pulaski, Tennessee. Also found in the trash was an empty box of miracle grow. Nothing else was found in the trash during this time. Miracle grow is associated with marijuana grows and has been found in marijuana grows. The affiant has been involved with dismantling previous marijuana grows. The Affiant also went by the residence of 417 Morningside Drive after the trash pull and observed at the residence that there are no flowers or other plants in the yard or on the porch that miracle grow would be used for.
>
> On June 6, 2012, Affiant and Inv. Joey Turner conducted another trash pull at 417 Morningside Drive. The designated time for the City of Pulaski to pick up trash is each Wednesday for this street. The trash was found to have been located in a poly cart at the edge of Morningside Drive to be picked up by the Wednesday trash pick up. The trash was

taken to the Pulaski Police Department. There were approximately 3 bags of trash in the poly cart. The Affiant and Inv. Turner went through each bag of trash. An Electric Bill was found in the name of Ashley Altman in the trash. The address was listed as Ashley Altman, 417 Morningside Drive, Pulaski, Tennessee. Also found in the trash were receipts from Home Depot, and All Seasons Gardening & Brewing Supply. Items on the Home Depot receipts list consist of buckets, bloom booster, fans, plastic bags, flex duct, screw hooks, and jack chains. Items on the All Season Gardening & Brewing Supply receipts consist of one 400-watt solarmax light bulb, one conversion bulb, and one 600-watt Hortiux bulb. These items are all consistent with indoor marijuana grows. These light bulbs are not commonly used in house hold lights or appliances. Also found was green stems and a small amount of dark color green leafy substance that was recognized to be marijuana. A field test was conducted on the stems and leafs and they did test positive for marijuana.

Photographs were taken of the receipts, stems and leafs. (4 Photographs are attached of the field test, electric bill, and the green leafy substance with stems)

Based on 6 years of law enforcement experience, and attending numerous specialized courses in narcotics investigations, affiant knows the above-described occurrences are consistent with the manufacture of marijuana and drug trafficking. Also, affiant believes this to be true and correct.

Furthermore, He therefore complains and asks that a warrant issue to search the above, premises of [the defendant] . . ., above described in said County, where he believes said personal property above is now possessed.

/s/ Kenneth Bass

The four photographs that were attached to the affidavit showed an electric bill in the name of the defendant; three receipts; a plastic bag containing a leafy substance; and a marijuana field test. The search warrant was executed on June 7, 2012.

PPD Chief John Dickey also testified at the hearing and admitted that he was the "reliable source" referenced in the affidavit. According to Chief Dickey, he had learned from a person whose identity he could not disclose that marijuana manufacturing was taking place at the defendant's residence. Chief Dickey stated that his unnamed source had gotten this information from a third party.

The trial court denied the defendant's motion to suppress, finding that the affidavit "executed by Investigator Bass provided sufficient facts from which a 'neutral and detached magistrate, reading the affidavit in a common sense and practical manner' could determine[] the existence of probable cause for issuance of the search warrant."

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, questions of credibility, the weight and value of the evidence and the resolution of conflicting evidence are matters entrusted to the trial judge, and this court must uphold a trial court's findings of fact unless the evidence in the record preponderates against them. *Odom*, 928 S.W.2d at 23; *see also* Tenn. R. App. P. 13(d). The application of the law to the facts, however, is reviewed de novo on appeal. *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998).

"A search warrant can only be issued on probable cause, supported by affidavit, naming or describing the person, and particularly describing the property, and the place to be searched." T.C.A. § 40-6-103; *see State v. Keith*, 978 S.W.2d 861, 869 (Tenn. 1998) ("The law in this State is clear that a written and sworn affidavit is an essential prerequisite to the issuance of a valid search warrant."). Additionally, before issuing a search warrant, the magistrate "shall examine on oath the complainant and any witness the complainant may produce, and take their affidavits in writing, and cause them to be subscribed by the persons making the affidavits." T.C.A. § 40-6-104. Similarly, Tennessee Rule of Criminal Procedure 41 provides that "[a] warrant shall issue only on an affidavit or affidavits that are sworn before the magistrate and establish the grounds for issuing the warrant." Tenn. R. Crim. P. 41(c)(1).

Tennessee law distinguishes between "citizen informants" and "criminal informants." Special rules fulfill the need for a detached and neutral review when probable cause is supplied by an informant who is an informant drawn from the "criminal milieu." In such situations, Tennessee requires the application of the two-pronged *Aguilar-Spinelli* test. *State v. Cauley*, 863 S.W.2d 411, 417 (Tenn. 1993); *State v. Jacumin*, 778 S.W.2d 430, 431 (Tenn. 1989); *see Spinelli v. United States*, 393 U.S. 410 (1969); *Aguilar v. Texas*, 378 U.S. 108 (1964). The two-prong test must be used to assure (1) the basis of the informant's knowledge and (2) the credibility of the informant

or the reliability of the information. *Jacumin*, 778 S.W.2d at 432. Finally, we note that "independent police corroboration [can] make up deficiencies in either prong" of the *Aguilar-Spinelli* test. *See State v. Moon*, 841 S.W.2d 336, 340 (Tenn. Crim. App. 1992).

To establish probable cause, an affidavit "must set forth facts from which a reasonable conclusion may be drawn that the contraband will be found in the place to be searched pursuant to the warrant." *State v. Norris*, 47 S.W.3d 457, 470 (Tenn. Crim. App. 2011) (citing *State v. Longstreet*, 619 S.W.2d 97, 99 (Tenn. 1981)). In addition, the affidavit "must allege that the contraband sought to be seized or the illegal activity in question exists at the moment the search warrant is to be issued." *Norris*, 47 S.W.3d at 470 (citing *State v. Curtis*, 964 S.W.2d 604, 616 (Tenn. Crim. App. 1997) (citing *Sgro v. United States*, 287 U.S. 206, 210-12 (1932))). "To this end, the affidavit must contain information which will allow a magistrate to determine whether the facts are too stale to establish probable cause at the time issuance of the warrant is sought." *Norris*, 47 S.W.3d at 470 (citing *Longstreet*, 619 S.W.2d at 99; *State v. Vann*, 976 S.W.2d 93, 105 (Tenn. 1998)). In determining staleness, "there is no rigid rule or specific language required to establish the time element." *State v. McCormick*, 584 S.W.2d 821, 824 (Tenn. Crim. App. 1979).

We need not tarry long over the defendant's assertions that the "reliable source" referred to in the affidavit was insufficient to satisfy the *Jacumin* requirements or that the lack of visible dates on the receipts rendered them too stale to establish probable cause. The fact that law enforcement officers found discarded marijuana, an illegal substance, inside garbage bags located in a trash cart outside the defendant's residence and that those garbage bags contained an electric bill in the name of the defendant, verifying her residency at the subject address, was sufficient to establish probable cause that "contraband will be found in the place to be searched pursuant to the warrant." *Norris*, 47 S.W.3d at 470; *see also California v. Greenwood*, 486 U.S. 35, 37 (1988) (holding that Fourth Amendment protections do not extend to the "warrantless search and seizure of garbage left for collection outside the curtilage of a home"). Any concern over staleness is overcome by the statements in the affidavit that trash was collected by the City of Pulaski each Wednesday and that officers collected the defendant's trash on Wednesday, June 6[1]; therefore, the marijuana found therein more probably than not was there for no more than one week. *See id.*; *McCormick*, 584 S.W.2d at 824. Accordingly, we find no error in the trial court's denial of the defendant's motion to suppress the evidence seized in the search of the defendant's residence.

---

[1]   Although not specifically stated in the affidavit, this court takes judicial notice of the fact that June 6, 2012, fell on a Wednesday. *See* Tenn. R. Evid. 201(b), (c).

## II. Sufficiency

The defendant also asserts that the evidence adduced at trial was insufficient to support her conviction of possessing a firearm during the commission of a dangerous felony. We disagree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As charged in count one of the indictment, "[i]t is an offense to possess a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony" and "to employ a firearm during the . . . commission of a dangerous felony" or "escape from the commission of a dangerous felony." T.C.A. § 39-17-1324(a), (b)(1), (3). Manufacturing marijuana is one of the enumerated dangerous felonies contemplated by this statute. *See* T.C.A. § 39-17-1324(i)(1)(L).

The defendant's argument on this issue is centered on the language of the indictment, which seemingly charged the defendant with both possession of a firearm *and* employing a firearm:

> That [the defendant] . . . did unlawfully possess a weapon, to-wit: 9mm Glock handgun, with the intent to go armed and did possess said handgun with the intent to employ it during the commission of and escape from a dangerous offense to-wit: Manufacturing Marijuana, Schedule VI Controlled Substance, in violation of Tennessee Code Annotated 39-17-1324, . . . .

On appeal, the defendant contends that "there was no evidence presented that [the defendant] had any intent to employ the handgun during the commission of *and* escape from manufacturing marijuana." Aside from a conclusory statement that the evidence at trial did not establish the offense of possession of a firearm, the defendant appears to focus her argument on the lack of evidence of employing a firearm.

At the conclusion of the State's proof at trial, the defendant moved for a judgment of acquittal based on the State's failure to prove that the defendant employed a firearm. The trial court granted the defendant's motion as to the employment of a firearm but "allow[ed] the case to go [to the jury] only on possession of a firearm." When the trial court instructed the jury prior to deliberations, the court instructed only on the possession of a firearm, and the verdict form included only the language pertaining to possession of a firearm.

To the extent the defendant is arguing that the evidence is insufficient to support a conviction of employing a firearm during the commission of a dangerous felony, such argument is inapt because the defendant obviously was not convicted of the offense of *employing* a firearm. With respect to the conviction of *possessing* a firearm, the proof at trial clearly established that the defendant, by her own admission, owned a handgun, which law enforcement officers located in the defendant's bedroom. The defendant was convicted of manufacturing marijuana, and she does not contest the sufficiency of the evidence pertaining to that conviction. Viewing this evidence in the light most favorable to the prosecution, we hold the evidence adduced at trial overwhelmingly supports the defendant's conviction of possessing a firearm during the commission of a dangerous felony.

### III. Correction of Clerical Error

Although not raised by either party, we detect errors that require correction in the judgment for the conviction of possessing a firearm during the commission of a dangerous felony. Based on the transcript of the sentencing hearing and the defendant's judgments for manufacturing marijuana and possession of a firearm, it is clear that the defendant was considered a standard, Range I offender. In the judgment for possessing a firearm, however, the trial court, in the release eligibility section, checked the box for "Violent 100%." The "Violent 100%" offender designation is reserved for those defendants to whom the requirements of Tennessee Code Annotated section 40-35-501 apply; none of the defendant's convictions qualify for sentencing pursuant to Code section 40-35-501. Tennessee Code Annotated section 39-17-1324(g)(1) provides, however, that a violation of subsection (a) "is a Class D felony, punishable by a mandatory minimum three-year sentence to the department of correction." Given the

trial court's ruling at the sentencing hearing that the "possession of a weapon with the intent to go armed during the commission of a dangerous felony" three-year sentence must be served "at 100 percent by statute," we believe the trial court was attempting to effectuate the mandatory minimum sentence by indicating release eligibility at 100 percent. The uniform judgment document provides a location to effectuate Code section 39-17-1324's requirement that the mandatory minimum sentence be served at 100 percent. Because the defendant is a standard offender rather than a violent offender, the judgment must be corrected.

Accordingly, on remand, the trial court shall enter an amended judgment to remove the designation for release eligibility of "Violent 100%" and to enter the sentence length of three years in the section for "Mandatory Minimum Sentence Length" for the violation of section 39-17-1324.

*Conclusion*

The trial court properly denied the defendant's motion to suppress the evidence obtained during the search of her residence, and the evidence is sufficient to support the defendant's convictions. We remand to the trial court for correction of the possession of a firearm judgment as outlined in this opinion. In all other respects, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE