IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 7, 2017 Session

## STATE OF TENNESSEE v. RODNEY PAUL STARNES, II

**Appeal from the Circuit Court for Dyer County**
**No. 16-CR-58       R. Lee Moore, Jr., Judge**

_____

### No. W2016-02491-CCA-R3-CD

_____

Defendant, Rodney Paul Starnes, II, was indicted by the Dyer County Grand Jury for one count of possession with intent to sell or deliver synthetic cannabinoids. Defendant filed a motion to suppress, alleging that the affidavit in support of a search warrant was defective and failed to give rise to probable cause because the affidavit contained no information establishing a confidential informant's basis of knowledge. The trial court granted Defendant's motion based upon the then controlling authority of *State v. Jacumin*, 778 S.W.2d. 430 (Tenn. 1989), and the State appealed. Following our review of the record and pertinent authorities, including the Tennessee Supreme Court's recent decision in *State v. Tuttle*, 515 S.W.3d 282 (Tenn. 2017), we reverse the judgment of the trial court and remand for further proceedings in the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Reversed and Remanded**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Lance E. Webb, Assistant District Attorney General, for the appellant, State of Tennessee.

Jason R. Creasy, Dyersburg, Tennessee (on appeal) and James E. Lanier; District Public Defender; and Sean P. Day, Assistant Public Defender (at trial) for the appellee, Rodney Paul Starnes.

OPINION

*Suppression hearing*

On July 19, 2016, the trial court conducted a hearing on Defendant's motion to suppress. The search warrant and supporting affidavit were made exhibits to the hearing. The relevant portions of the affidavit stated:

> 2. A Confidential Source, hereafter referred to as CS, has contacted the affiant concerning suspect Rodney Starnes, "AKA Hot Rod" selling synthetic cannabinoids from his residence at 55 Kari Circle. CS stated that Mr. Starnes is a well[-]known synthetic cannabinoid dealer and that CS has previously bought synthetic cannabinoids from Mr. Starnes.
>
> 3. A vehicle registration query revealed that Rodney Starnes has a gold 2011 Ford pick[-]up truck currently registered to him at the address of 55 Kari Circle[,] Dyersburg, TN with an expiration date of 11/30/15. A driver's license check also revealed that 55 Kari Circle Dyersburg, TN 38024 belongs to Rodney Starnes.
>
> 4. On Monday 11-09-15[,] Inv. Stoney Hughes and Deputy Chief Glen Cook were conducting a stationary observation of Mr. Starnes['s] residence on 55 Kari Circle after receiving complaints from neighbors that a vehicle pulls up every day at approximately 1530 hours and picks up narcotics. At approximately 1528 hours a dark blue Ford sedan occupied by a white male and a white female received a package from a female individual who exited the residence at 55 Kari Circle. The registration on the sedan came back to 210 Holly Springs Cemetery Road Dyersburg, TN 38024. The residence belonging to Mr. Starnes['s] brother identified as Michael Bryson.
>
> 5. On 11-12-2015 Deputy Chief Glen Cook, Inv. Stoney Hughes, Inv. Ken Simpson, Deputy Danny Petrie, and affiant conducted a second stationary observation of the residence at 55 Kari Circle. Deputy Chief Glen Cook observed a gold Ford sedan pull up at the residence and the driver of the aforementioned vehicle go to the rear door of the residence. Then the driver and a female got into the vehicle and left heading towards Finley. Affiant observed the passenger of the vehicle not wearing a seatbelt and a small child not restrained in the vehicle. Affiant then initiated a traffic stop on said vehicle on Oak Street in Finley. During the traffic stop a green substance believed to be marijuana was

discovered during a consent search of the vehicle. The occupants were identified as Jessica Ramirez and Felicia Brooks. Miss Brooks was identified as Mr. Starnes['s] girlfriend. An interview was conducted by Inv. Hughes. Miss Brooks admitted that Mr. Starnes sells synthetic cannabinoids and she delivered the package to the car observed by Inv. Hughes and Deputy Chief Cook. Miss Brooks also advised that Mr. Starnes also sells synthetic cannabinoids from his truck. When asked if she knew what was inside the package she stated that she had a pretty good idea that the package contained synthetic cannabinoids.

6. Deputy Chief Glen Cook and Inv. Simpson waited at 55 Kari Circle for Mr. Starnes to return home from work. While waiting for Mr. Starnes at the residence, Michael Bryson's wife identified as Jamie Bryson arrived at the residence. She admitted to Inv. Simpson that she and Michael get synthetic cannabinoids from Mr. Starnes. When asked when she last got synthetic cannabinoids from Mr. Starnes she stated that it had been approximately one month.

No testimony was presented at the suppression hearing. Defense counsel argued that the second paragraph of the affidavit contained no statement of reliability and that neither the informant's statement that he had previously bought cannabinoids from Defendant, nor the statement by Felicia Brooks that Defendant sells synthetic cannabinoids from his truck were sufficiently detailed. The State argued that the information in the affidavit should be taken as a whole; that the informant's statement was corroborated by police observation; and that considered in its entirety, the information in the affidavit gave rise to probable cause.

The trial court stated that the affidavit was "poorly drafted" and that "there could be some information that's lacking to comply with *Aguilar-Spinelli* and the *Jacumin* decision . . . ." The trial court concluded that the affidavit failed to establish probable cause and granted Defendant's motion to suppress.

*Analysis*

On appeal, the State contends that the affidavit was sufficient to establish probable cause. When reviewing a trial court's ruling on a motion to suppress, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolutions of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Accordingly, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. Appellate courts conduct a de novo review of questions of law and the trial court's

application of law to facts. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). As the prevailing party, the State is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Odom*, 928 S.W.2d at 23.

Under both the Tennessee and United States Constitutions, no search warrant may be issued except upon probable cause, which has been defined as "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." *State v. Henning*, 975 S.W.2d 290, 294 (Tenn. 1998). Tennessee requires a written and sworn affidavit, "containing allegations from which the magistrate can determine whether probable cause exists," as "an indispensable prerequisite to the issuance of a search warrant." *Id*. The magistrate is then tasked with reading this affidavit "in a commonsense and practical manner." *State v. Saine*, 297 S.W.3d 199, 206 (Tenn. 2009). A finding of probable cause made by an issuing magistrate is entitled to great deference. *State v. Yeomans*, 10 S.W.3d 293, 296 (Tenn. Crim. App. 1999) (citations omitted). Accordingly, the standard to be employed in reviewing the issuance of a search warrant is "whether, in light of all the evidence available, the magistrate had a substantial basis for finding probable cause." *State v. Meeks*, 876 S.W.2d 121, 124 (Tenn. Crim. App. 1993) (citation omitted).

Prior to *State v. Tuttle*, 515 S.W.3d 282 (Tenn. 2017), Tennessee courts determined whether information provided by a criminal informant gave rise to probable cause using the two-prong test adopted by the United States Supreme Court in *Aguilar v. Texas*, 378 U.S. 108 (1964) and *Spinelli v. United States*, 393 U.S. 410 (1969). *See State v. Jacumin*, 778 S.W.2d 430, 436 (Tenn. 1989) (adopting the two-pronged *Aguilar–Spinelli* test "as the standard by which probable cause will be measured to see if the issuance of a search warrant is proper under Article I, Section 7 of the Tennessee Constitution"). The *Aguilar–Spinelli* test required the supporting affidavit to show: (1) the informant's basis of knowledge; and (2) the veracity of the informant or the reliability of the informant's information. *Id*. This court expounded on this two-prong test in *State v. Moon*, 841 S.W.3d 336 (Tenn. Crim. App. 1992), stating:

> Under the first or "basis of knowledge" prong, facts must be revealed which permit the magistrate to determine whether the informant had a basis for his or her information that a certain person had been, was or would be involved in criminal conduct or that evidence of crime would be found at a certain place. Under the second or "veracity" prong, facts must be revealed which permit the magistrate to determine either the inherent credibility of the informant or the reliability of his information on the particular occasion.

- 4 -

*Id*. at 338. While the affidavit need not give a large amount of detail regarding the informant's credibility, it had to contain "some concrete reason why the magistrate should believe the informant." *State v. Lowe*, 949 S.W.2d 300, 305 (Tenn. Crim. App. 1996). Independent police corroboration could make up for deficiencies in either the "basis of knowledge" or the "veracity" prong. *Moon*, 841 S.W.3d at 341.

In *Tuttle*, our supreme court considered the continuing viability of *Jacumin*, the Tennessee Supreme Court decision embracing the two-prong *Aguilar–Spinelli* test, and overruled it, instead adopting the totality-of-the-circumstances analysis established by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983). *Tuttle*, 515 S.W.3d at 302-08. When doing so, the court reiterated:

> [U]nder the totality-of-the circumstances analysis, the informant's basis of knowledge and veracity or credibility remain highly relevant considerations. Rather than separate and independent considerations, they "should [now] be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question [of] whether there is 'probable cause' to believe that contraband or evidence is located in a particular place."

*Id*. at 308 (quoting *Gates*, 462 U.S. at 230). Under this analysis, bare-bones affidavits containing only conclusory statements remain insufficient, and independent police corroboration of the details provided by the informant continues to add value to the affidavit. *Id*. at 307-08.

Here, the affidavit indicated the informant had been to the residence located at 55 Kari Circle in Dyersburg and had purchased synthetic cannabinoids from Defendant. The affidavit stated that Defendant was "a well[-]known synthetic cannabinoid dealer. . . ." The affidavit also stated that officers staked out Defendant's residence after receiving complaints from neighbors that a car pulled up every day at 3:30 p.m. to pick up drugs. On November 9, 2015, officers observed a car pull up at approximately 3:28 p.m., and a woman received a package from a female occupant of the house. The vehicle's registration was to an address belonging to Defendant's brother, Michael Bryson. The affidavit stated that on November 12, 2015, officers staked out Defendant's residence again and observed a car pull up, and the driver went to the rear of Defendant's house. Officers observed two passengers in the car not wearing seatbelts and stopped the car. With consent, they searched the vehicle and found marijuana. One of the occupants, Felicia Brooks, was identified as Defendant's girlfriend. She told police that Defendant sold synthetic cannabinoids and that she delivered a package, which she believed contained synthetic cannabinoids, to the car which officers observed on November 9, 2015. She told officers that Defendant also sold synthetic cannabinoids from his truck.

Officers waited at Defendant's home for Defendant to return. While waiting there, Jamie Bryson, who was identified as Defendant's sister-in-law, arrived and told officers that she and Defendant's brother had gotten synthetic cannabinoids from Defendant one month prior.

After reviewing the affidavit and applicable law, we conclude the trial court improperly granted Defendant's motion to suppress. The facts set forth in the affidavit established the informant's veracity and basis of knowledge, both of which remain highly relevant considerations under the totality-of-the-circumstances analysis. We conclude the affidavit provided the magistrate with a substantial basis for determining the issuance of a search warrant for Defendant's residence would result in the discovery of synthetic cannabinoids on the premises. Accordingly, we reverse the judgment of the trial court.

CONCLUSION

Based on the foregoing, we reverse the judgment of the trial court and remand to the trial court for further proceedings.

_____
THOMAS T. WOODALL, PRESIDING JUDGE